## Pratt v. York.

### (Decided February 23, 1923.)

### Appeal from Greenup Circuit Court.

1. Bills and Notes—Holder in Due Course—Pleading.—It is a well founded rule of practice that pleading without proof or proof without pleading is insufficient to entitle the litigant to relief, unless the defect in his pleading is cured by that of his adversary, which is not done where its terms are merely responded to; hence a pleading by an assignee of a negotiable note which does not state the date it was acquired, nor that it was done, before maturity or that the pleader is a holder "in due course," does not entitle the pleader to the rights and benefits of an innocent bona fide purchaser without notice of prior equities.

2. Contracts—Fraud, Covin and Misrepresentation.—The failure to comply with a future promise is not sufficient to establish fraud, covin and misrepresentation in the procurement of the contract sued on, but such failure if established would furnish grounds for a counterclaim if that defense should be relied on.

3. Names—Assumed Names—Bills and Notes—Holder in Due Course. —The failure to observe the requirements of section 199b-1 of the Kentucky Statutes by a partnership is unavailable as a defense in an action on a note by an assignee for value before maturity of the note "in due course," though it was obtained through the forbidden transaction.

4. Names—Partnership—Enforcement of Contracts.—Neither are the terms of the statute applicable to a purely interstate transaction, and where goods or articles are sold through an interstate contract the seller though a partnership will not be required to comply with the provisions of the statute although under the terms of the contract he is obligated to do some act local to this jurisdiction by way of erecting, constructing or otherwise completing the finished product which the purchaser bought and contracted for.

5. Names—Assumed Names.—Whether the terms of the statute would apply to but a single transaction, regardless of the character of commerce involved, is a question not finally determined though the court is inclined toward a negative answer.

J. S. FULLERTON for appellant.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Sustaining the motion for an appeal and reversing the judgment.

Appellant and plaintiff below, W. I. Pratt, filed this ordinary action against the partnership of Gilly Bros. & Company, a firm of which appellee and defendant below, J. F. York, was a member, seeking to recover a judgment against the members of the firm on four promissory notes, which defendants as a partnership executed to the Brennard Manufacturing Company on December 11, 1916, and aggregating $430.00. The notes were executed by appellee, York, in the name of his firm. The other members of the firm were not summoned and in his separate answer he denied they were firm obligations, and also denied that the obligee in them, the Brennard Manufacturing Company, had ever endorsed them to plaintiff. In another paragraph his answer alleged "that the said writings and each of them was obtained from this defendant by fraud, covin, and misrepresentation of the said Brennard Manufacturing Company, its agents and servants," and that plaintiff had notice thereof "long before they came into his hands." Another paragraph pleaded that the Brennard Manufacturing Company was a partnership and that before entering into the contract with the firm of Gilly Bros. & Company, forming the consideration for the notes sued on, it had not filed in the office of the clerk of the Greenup county court the statement required by section 199b-1 of the Kentucky Statutes, and such failure was relied on as a defense to a recovery. The reply denied the defense of fraud, covin and misrepresentation, and in avoidance of the failure to comply with the section of the statute, alleged that the transaction out of which the indebtedness was incurred was an interstate one and that the provisions of the statute did not apply to it. The rejoinder put in issue that avoidance, and upon trial before the court, a jury having been waived, the petition was dismissed. Plaintiff's motion for a new trial was overruled and he has filed the transcript in this court with a motion for an appeal. A number of alleged errors are urged in brief for appellant, but we deem it necessary to discuss only those referred to below.

The Brennard Manufacturing Company is a partnership composed of T. O. Loveland and J. L. Records, which is located at Iowa City, Iowa, and its business

is to sell to merchants plans and premiums for popularity contests similar to that involved in the case of Commercial Security Co. v. Archer, 179 Ky. 842, and *the same* as was involved in the case of Pratt v. Rounds, 160 Ky. 358. Through the solicitations of an agent, the firm of Gilly Bros. & Company, engaged in business in Russell, Kentucky, gave an order to the Brennard Manufacturing Company for a list of premiums, including a piano, some watches, silverware, and other articles, as well as advertising matter, all of which were set out in detail as a part of the contract and the firm agreed to and did execute its promissory notes in consideration therefor, aggregating $640.00, two of which, aggregating $210.00, were paid. The Brennard Manufacturing Company agreed to send an organizer to assist the firm in putting into operation the contest and in conducting it, at least until its members became familiar with the method, and who was to remain with the firm ''for such a period as Brennard Manufacturing Company may deem necessary.''    The company further agreed in the contract to conduct all the correspondence ''with contestants and clubs in conducting and managing the entire trade extension campaign.''    It furthermore agreed that if during the year in which the contest was conducted one-half of one per cent of the gross sales of the firm of Gilly Bros. & Company did not amount to $640.00, it would pay the deficiency, but in order for it to be so obligated Gilly Bros. & Company agreed to do certain things with reference to conducting the contest and to promptly pay their notes as they fell due. That contract was subject to the approval of the Brennard Manufacturing Company, which was done, and the goods were to be shipped f. o. b. cars at the point of shipment. That was done, and in due time they were received at Russell, Kentucky. Before their arrival, however, a change was made in the firm of Gilly Bros. & Company, whereby it was converted into a corporation and some of its old members passed out while others became interested as stockholders, but defendant, York, remained with the firm and to some extent actively participated in managing and conducting its affairs.    An active member, who became interested in the business for the first time after the corporation was formed, was W. M. Jones, who seems to have been the chief manager of the business from the time he became interested in it.    The corporation received the

goods and adopted the contract made by its predecessor, and within the time stipulated, as we construe the contract, an organizer was sent to perform the duties agreed upon therein and remained there about one week, during which time Jones wrote a letter to the Brennard Manufacturing Company in which he said: "I consider that she (the organizer) has done remarkably well in getting our clubs organized. She has been the most faithful worker I have ever seen. She never tires and maintains her good nature wonderfully. If the system is not a success it will be certainly no fault of hers, and if you work your end as well as she worked hers here at this end, we will undoubtedly win."

The premiums were distributed to those who, under the plan, won them and the business of the firm that year was increased by about $9,500.00, although the defendant firm stated that they expected it to increase to $138,-000.00 from $115,000.00 the year previous.

The only fact, as we view the evidence, upon which any violation of the contract by Brennard Manufacturing Company could possibly be based is the one made by counsel for defendant that it obligated itself in the contract that the gross receipts of the firm of Gilly Bros. & Company should be not less than $138,000.00 during the year of the contest, whereas it was only about $125,-000.00 and that there is due from it one-half of one per cent of the difference between those two sums. We find nothing in the contract containing any such obligation, but if it were otherwise the failure of the Brennard Manufacturing Company to pay the percentage on that difference would not constitute fraud, covin and misrepresentation, pleaded as a defense, but only grounds for a counterclaim growing out of the failure of the company to comply with a future promise, and a violation of which would by no means constitute fraud, covin or misrepresentation in the inception of the contract. There is no effort to assert a counterclaim, and therefore, if the contract should be construed as contended for by defendant, it would not sustain the defense interposed, and since the evidence, to our minds, shows a substantial, if not a literal compliance with the contract in other respects, or if not the non-compliance was waived, it results that this defense is not sustained by the testimony.

The other defense, relying on a non-compliance with the provisions of section 199b-1, Kentucky Statutes, pre-

sents a more difficult question. It would not be available as against plaintiff, to whom the notes were transferred, if it were alleged in the petition that he purchased and they were transferred to him before they became due, or if it had been alleged that he was "a holder in due course," but the petition makes neither allegation, and the draftsman of the answer was cautious not to cure the omissions. The non-availability of that defense to an innocent holder of a note growing out of a transaction otherwise voidable because of a non-compliance with the section of the statutes is fully sustained by the case of First National Bank of Central City v. Utterback, 177 Ky. 76, 197 S. W. 534. It is a universal rule of practice often applied by this court that neither pleading without proof nor proof without pleading will avail the litigant, since it requires both for a successful assertion of his rights in court; and it is equally well established that the rule will be applied in all cases where the defect is with the pleading, and the counter pleading has not cured it. No such curative effect may be given to the pleadings of defendant in this case, as we have seen, and we must, therefore, determine the question involved independently of the doctrine of the Utterback case.

It is an elementary principle that regulatory statutes, such as is the one relied on here, do not apply to purely interstate transactions, and if the one here involved is of that nature the defense of a non-compliance with the statute must be denied. We are thus brought face to face with a question that has perplexed and produced no little confusion in the various courts, and one which calls for some nicety of distinction in its settlement. Of course, it is our duty to follow the opinions of the Supreme Court of the United States on this question, they admittedly being our final guide where federal questions are involved. If there had been nothing but a shipment of goods f. o. b. cars from Iowa city, Iowa, to Russell, Kentucky, there would be no difficulty encountered, since in that case the transaction would undoubtedly be an interstate one, but the contract involved something in addition to that, and which something was to be performed in this state, and it was the furnishing of the organizer for the brief time agreed upon to render local assistance in the manner hereinbefore indicated.

In the case of Browning v. City of Waycross, 233 U. S. 16, the Supreme Court had before it the validity of an

ordinance of the city of Waycross, Georgia, imposing a license tax on erectors of lightning rods, which were purchased under a purely interstate transaction, but the agent who sold them afterwards attached them to the houses of his customers. It was held that the mere selling of the articles was one in interstate commence, but the act of attaching them to the house, which was no part of the interstate transaction, was a local one and subject to the regulatory powers of the city of Waycross, and the ordinance was upheld.

In the subsequent case of York Manufacturing Company v. Colley, 247 U. S. 21, the transaction involved the selling as well as the installation of an ice plant, and the court held that it was one purely in interstate commerce, although the erecting of the plant, composed of the parts sold, was an act done locally. That case was distinguished from the Waycross case upon the ground that the transaction alleged to have been an interstate one was not complete without the erection of the plant, whereas in the Waycross case the interstate transaction did not contemplate the *erection* of the lightning rods, and which latter act was independent of it, and that one engaged in that business would be subject to any otherwise valid regulatory law.

Following the Colley case we held in the case of United Iron Works Co. v. Watterson Hotel Co., 182 Ky. 113, that a sale through an interstate transaction of the material for the construction of a refrigeration and ice manufacturing plant in the Watterson Hotel at Louisville, Kentucky, was an interstate transaction, notwithstanding the work of erecting the plant out of the materials furnished was performed wholly within this state. Applying the facts of this case to the ones referred to, we are forced to the conclusion that the transaction here involved was purely an interstate one, and that a failure to comply with the provisions of the statute relied on is not an available defense. It will be noticed that the transaction involved in this case was not one purely for the sale of the premiums, but on the contrary, as stated in the contract itself, it was a sale to Gilly Bros. & Company of the copyrighted plan of the Brennard Manufacturing Company for the conducting of such contests, which plan included not only the premiums forming the list of goods sold but likewise instructions by an organizer as to conducting the plan, and which would neces-

sarily be furnished by the copyrighter of the plan and formed a part of it. We, therefore, hold that under the doctrine of the Colley case, and followed by us in the United Iron Works Company case, the transaction here involved was one purely in interstate commerce, to which the provisions of the sections relied on do not apply.

Furthermore, so far as this record shows, the only transaction in which Brennard Manufacturing Company engaged in was the single one here involved, and it is extremely doubtful whether the statute relied on applied to or prohibits the doing of but a single transaction. In the case of E. C. Artman Lumber Co. v. Bogard, 191 Ky. 392, we had under consideration the application of section 571 of the statutes, which according to its terms as therein pointed out applies to all corporations "carrying on *any* business in this state," and it was held that by the use of the word "any" the legislature intended to include within the provisions of the statute all business carried on although it consisted in but a single transaction. An examination of the cases and authorities referred to in that opinion will show that the great majority of the courts, including the Supreme Court of the United States, deny the application of such statutes to a single transaction where they are directed to the carrying on of business generally without the use of the special limiting word "any." In addition to the holding of those cases and authorities, we may also refer to the cases of Penn Colleries Co. v. McKeever, by the Court of Appeals of the state of New York, reported in 2 L. R. A. (N. S.) 127, and Booth & Co. v. Weigand, 10 L. R. A. (N. S.) 693. Other cases will be found in the notes to those opinions.

The language of the section relied on (199b-1) does not use the word "any" as qualifying the forbidden business, as is done by section 571, since the forbidden act therein is that "no person or persons shall hereafter carry on or conduct or transact business in this state," etc., without complying with the subsequently required terms. It is, therefore, to say the least of it, by no means clear that the section under consideration is applicable to an act involving but a single transaction. None of the cases heretofore before this court, construing the section and its applicability, announced a view contrary to the one therein intimated. In them there was involved more than a *single* transaction, or if not the question was not urged or passed on. Since, however, the section

is not applicable for the reason hereinbefore stated, we have concluded not to rest this opinion on the latter question.

granted and the judgment is reversed with directions to set it aside and for proceedings consistent herewith.