## Rice v. Pulliam, et al.

(Decided December 2, 1910.)

### Appeal from Adair Circuit Court.

Fraud—Misrepresentation in the Sale of Goods—Action—Counter-claim for Damages—Waiver.—In an action by a seller of jewelry against the purchaser for the price of the goods sold, which the purchaser accepted and executed acceptances therefor which had not been paid, and which were represented by the seller to be 14-karat gold, when the goods came it was the duty of the purchaser to have rejected them or to have ascertained whether they were of the kind represented. In his answer, he set up a counter-claim for $225.00 damages, and recovered $200.00. Held, the counter-claim is too remote, and is not the subject of an action for damages. When appellee learned that the goods was not 14-karat gold, having then failed to return them or offered

to do so, his acceptance was a waiver of the representation, even if made.

R. L. CAMPBELL for appellant.

(No attorney for appellees.)

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellee, Thomas Pulliam, brought a lot of cheap jewelry by sample from appellant's traveling salesman in May, 1906. The order, or contract, was written and signed in duplicate. One copy was sent to the seller for filling the order. The other was retained by Pulliam. The buyer had the right to pay for the goods upon their receipt and after inspection, at a discount, or was privileged to execute acceptances for the payments. The effect of the contract is that if the buyer did not sell the articles within a year he was privileged to return them at their contract price. The goods were promptly shipped and received. The acceptances were executed and delivered without complaint. But the acceptances were not paid. Repeated duns by the seller were ignored. No complaint was made as to their quality. About three years after the sale this suit was brought on the acceptances. Pulliam claims in his answer that he was swindled by the salesman; that the latter represented all the goods to be 14-carat gold, and said that if they were not sold by appellee he would return every sixty days and would take back such as were not sold. He claims that the drummer misread the paper to him to the foregoing effect and that he did not read it before signing it. There is no claim that the goods were not precisely as they were described in the written order. Their prices seem to refute the claim that they were 14-carat gold. But be that as it may, when they were received appellee had ample opportunity to examine them before executing his paper. He admits that he learned soon after that they were not as represented. Still he held them, and is holding them yet he claims. He never offered to return them. He claims that he wrote the seller a letter before the goods were shipped stating what the contract was, as he now claims it to have been, between him and the salesman, and told the seller if that was not satisfactory to not ship the goods. The evidence is that the letter, if written, was not received. Unless it was received and the terms accepted, or unless assented to, it could not form a con-

tract. Appellee admits, at least it is shown by the evidence, that he knew the terms of the written contract before he wrote the letter just mentioned. There was no occasion for him to write such a letter unless he had been notified that the contract which he had signed was of a different purport from the one which he now claims he entered into. So, when the goods came he was under the duty either to have rejected them, or to have ascertained whether they were of the kind and shipped on the terms which he understood satisfied the agreement. For he must take notice that his letter alone, unreceived by the other party, could not constitute a contract. But he did neither. He sold some of the goods and has kept the money. Some he sold, but says that they were returned to him by the purchasers, as being not of the kind represented, and he had to refund the money.

In his answer he sets up a counterclaim for $225 damages done to his standing as "an honorable merchant" by having had the pinchbeck jewelry palmed off on him, and by him on his customers because of the alleged fraud of the drummer. The court instructed the jury so as to allow them to give the damages on that score. And they gave appellee $200. The counterclaim asserted is too remote. It is not the subject of an action for damages. And the criterion submitted is wholly without jurisdiction in law. The counterclaim should have been stricken out on plaintiff's demurrer.

On the other branch of the case, the contract as claimed by appellee is not materially different from that which he signed, except as to represented quality of the goods—that is, that they were to be 14-carat gold. When appellee learned that they were not 14-carat gold, having then failed to return them, or offered to do so, his acceptance was a waiver of the representation, even if it was made. His conduct is wholly at variance with his present attitude. There should have been a peremptory instruction on plaintiff's behalf.

There is still another branch of the case; that against the purchaser of the entire stock of goods of Pulliam, sold in bulk it is claimed in violation of section 2651a, Ky. Stats. But that branch of the case has not been decided by the circuit court, and consequently is not here now for review.

Judgment reversed, and cause remanded for a new trial under proceedings consistent herewith.