**In the Matter of MEL GOLDE SHOES, INC., Debtor.**

**JOHNSTON & MURPHY SHOES, INC., Appellant,**

v.

**MEINHARD COMMERCIAL CORPORATION, William Iselin & Company, Wallstreeter Shoe Company and Leverenz Shoe Company, Appellees.**

No. 18212.

United States Court of Appeals Sixth Circuit.

Dec. 3, 1968.

Mark Davis, Jr., of Payne & Davis, Louisville, Ky., for appellant.

Jerry A. Lloyd, of Goldberg & Lloyd, Louisville, Ky., for appellees.

Before WEICK, Chief Judge, and O'SULLIVAN and McCREE, Circuit Judges.

O'SULLIVAN, Circuit Judge.

We consider the appeal of Johnston & Murphy Shoes, Inc., from a judgment of the District Court for the Western District of Kentucky holding that such company's right to reclaim a shipment of shoes from an insolvent purchaser—Mel Golde Shoes, Inc.—under the Uniform Commercial Code of Kentucky, K.R.S. § 355.2–702(2),[1] was subordinate to attachments levied thereon by creditors of such debtor-purchaser. The judgment of the District Court vacated a contrary holding by the Bankruptcy Referee.

On January 23, 1967, Johnston & Murphy Shoes, Inc., delivered a shipment of shoes to Mel Golde Shoes, Inc., at Louisville, Kentucky. The following day appellees, Meinhard Commercial Corpora-

---

1. "K.R.S. 355.2–702 *Seller's remedies on discovery of buyer's insolvency.* * * *

"(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt * * *."

tion and William Iselin & Company, levied attachments against the entire inventory of Golde. On February 2, Golde filed a petition in the United States District Court seeking relief under Chapter XI of the Bankruptcy Act. The petition's averment that Golde was "unable to pay its unsecured debts as they mature" disclosed Golde's insolvency within the meaning of Kentucky's Uniform Commercial Code [2] and the Referee so found. On February 1, 1967, the day before the Chapter XI petition was filed, Johnston & Murphy, exercising the right given by above K.R.S. § 355.2–702(2), made timely demand for the return of the shoes. This was followed by a reclamation petition in the bankruptcy court. The referee held that Johnston & Murphy's right of reclamation was superior to any lien rights of the attaching creditors. He was of the view, however, that the Chapter XI proceeding would be unworkable if the shoes were returned and granted appellant the status of a secured creditor in lieu of return of the shoes. The propriety of this procedure is not challenged if Johnston & Murphy's reclamation right is superior to any rights of the attaching creditors. In the District Court, the referee's order was overruled in an Opinion and Order which concluded as follows:

"It is Therefore Ordered that the Referee's order dated April 7, 1967, is hereby overruled and that Johnston & Murphy Shoes, Inc., having failed to establish its statutory right to reclamation before certain other creditors became lien creditors, is to be treated as a creditor with an unperfected security interest."

We reverse.

Under K.R.S. § 355.2–702(2), supra, Johnston & Murphy had the right to re-claim the shoes shipped to the insolvent Mel Golde unless such right is taken away by subparagraph (3) of § 355.2–702, which reads:

"(3) The seller's right to reclaim under subsection (2) is subject to the *rights* of a buyer in ordinary course or other good faith purchaser *or lien creditor under this article* (KRS 355.2–403). * * *." (Emphasis supplied.)

It is, and was, the contention of the appellee creditors that they became "lien creditors" by virtue of their attachments, pursuant to K.R.S. § 355.9–301(3).[3] We must, accordingly, look to K.R.S. § 355.2–403 for delineation of the "rights" of lien creditors. The caption of K.R.S. § 355.2–403 advises that it deals with "Power to transfer; good faith purchase of goods; 'entrusting' " and provides no help to a solution of the problem here, but concludes in its final subsection (4) that,

"(4) the rights of other purchasers of goods and of lien creditors are governed by the Articles on Secured Transactions (Article 9), Bulk Transfers (Article 6) and Documents of Title (Article 7)."

Inasmuch as Bulk Transfers and Documents of Title have no relevance here, we move on to Article 9, which in its first section, K.R.S. § 355.9–101, states, "This article shall be known and may be cited as Uniform Commercial Code—*Secured Transactions.*" (Emphasis supplied.) The District Judge and the appellee creditors assume that the section of Article 9 that has relevance here is in its Part 3 which bears the catchline "Rights of Third Parties; Perfected and Unperfected Security Interest; Rules of Priority." They rely specifically on K.R.S. § 355.9–301 entitled, "Persons who take priority over *unperfected security interests;*

---

2. "K.R.S. § 355.1–201(23):
  A person is 'insolvent' who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due or is insolvent within the meaning of the federal bankruptcy law."

3. "K.R.S. § 355.9–301.
  (3) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like * * *."

'lien creditor' " and providing, in relevant part:

"(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of * * *

"(b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected;"

■ Basically, appellees' position, upheld by the District Judge, is that Johnston & Murphy's status is "to be treated as a creditor with an *unperfected* security interest." We do not read the quoted section of the statute as defining or throwing any light upon the "rights" of a "lien creditor" vis-a-vis the right of reclamation of a defrauded seller under § 355.2–702(2). This latter right is not a "security interest" in the goods sold and Johnston & Murphy are not attempting to assert a "security interest" to support their position. Thus, at the end of this circuitous statutory journey, we arrive at the conclusion that Kentucky's Commercial Code does not contain any provision defining the relative priorities of a creditor as against a reclaiming seller. Such being the situation, we must turn to relevant common law of Kentucky for the needed answer. The Commercial Code in K.R.S. § 355.1–103 provides:

"355.1–103 *Supplementary general principles of law applicable.* Unless displaced by the particular provisions of this chapter, the principles of law and equity * * * shall supplement its provisions."

■ We consider that the early decision of Lane & Bartlett v. Robinson, 57 Ky.Rep. 496 (1857) announced Kentucky's agreement with the general rule that a defrauded seller's right to reclaim his goods is superior to any right of attaching creditors. The Court said:

"And no reason exists why, as between attaching creditors and vendors asserting an enforceable equity growing out of the contract of sale, the latter should not be preferred. It would certainly be unjust to subject to the payment of the debts of their fraudulent vendee, goods he had improperly obtained from them, and which, in equity, they were entitled to reclaim. This would virtually secure to such vendee the fruits of his fraud by the payment of his debts to the extent of the value of the goods, and defeat the equity of the vendor and the object of the statute." 57 Ky.Rep. at 502–503.

We consider that the rights of the unpaid seller—given by § 355.2–702(2)—were tantamount to those available to a defrauded seller. In the Official Comment to the Code, its draftsmen say:

"2. Subsection (2) takes as its base line the proposition that any receipt of goods on credit by an insolvent buyer amounts to *a tacit business misrepresentation of solvency and therefore is fraudulent as against* the particular seller." Uniform Commercial Code, 1962 Official Text with Comments, p. 190. (Emphasis supplied.)

In In re Monson, 127 F.Supp. 625, 626 (W.D.Ky.1955), Chief Judge Roy Shelbourne recognized and enforced Kentucky law which gives priority to a defrauded seller's right of reclamation over the liens of a trustee in bankruptcy. This view received support in Volume 79 of the Harvard Law Review at p. 610:

"The lack of substantive direction in the Code as to the power of a lien creditor suggests that prior state law may still be followed. * * * Where, as in the majority of jurisdictions, pre-Code law allows the defrauded seller to defeat the claim of a levying creditor, * * * the seller will prevail."

The case of In re Kravitz, 278 F.2d 820 (3rd Cir. 1960) has been cited by both the appellant and the appellees in support of their respective positions, but we consider that if it has any relevance here it supports the position we take. The question there involved was whether a seller's right of reclamation granted by § 2–701 of the Uniform Commercial Code could be enforced against the lien of a trustee in bankruptcy. The Third Circuit held that it could not because *under*

*Pennsylvania law* the rights of a trustee in bankruptcy as a "lien creditor" were superior to a defrauded seller. The Court there recognized that the Code Sections did not contain the needed rule. It said,

"It is perfectly clear that, while Section 70, sub. c of the Bankruptcy Act makes the trustee an ideal lien creditor, what such a lien creditor gets is determined by the law of the state involved, here Pennsylvania." 278 F.2d at 822.

Conversely, looking to Kentucky law, we hold that the appellant Johnston & Murphy's right to reclaim the goods sold to the debtor took priority over appellees' attachment liens.

The judgment of the District Court is reversed with direction that further proceedings be had in conformity with the order of the Referee.